UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAN-WAY FARMS, INC. and SAN-WAY
FARMS, INC. D/B/A ALAFIA RIVER
FARMS, LLC,

     Plaintiffs,

v.                                              Case No. 8:20-cv-1969-T-36CPT

SANDIFER FARMS, LLC,

     Defendant.
_____/

## AMENDED MOTION FOR DEFAULT JUDGMENT

COMES NOW, Plaintiffs, San-Way Farms, Inc. and San-Way Farms, Inc. d/b/a Alafia River Farms, LLC ("Plaintiffs"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, hereby move the Court for the entry of a Default Judgment against Defendant, Sandifer Farms, LLC ("Defendant") for failure to respond to the Complaint filed and served upon it. In support hereof, Plaintiffs state as follows:

1. Plaintiffs bring this action to enforce a Reparations Award issued against Defendant and in favor of Plaintiffs by the United States Secretary of Agriculture.

2. Plaintiffs, by and through undersigned counsel, filed the Complaint with the Court on August 24, 2020 (Doc. # 1).

3. Through the Court's May 7, 2021 Order (Doc. # 17) denying Plaintiffs' original Motion for Default Judgment and vacating the Clerk's previously entered Default, Plaintiffs' learned their previously filed return of service (Docs. # 6, 10) was defective because it failed to attest that Bruce A. Barron was served in his capacity as registered agent for Defendant or an

officer, managing or general agent, or any other agent authorized to receive service for Defendant.

4. The Court's May 7, 2021 Order also extended the time for Plaintiffs to effect service on Defendant by 30 days and allowed an additional 21 days within which to file proof of service with the Court. (Doc. # 17).

5. As evidenced by Plaintiffs Return of Service filing (Doc. #20), on May 12, 2021, Plaintiffs served Bruce A. Barron, in his capacity as registered agent of Defendant, with a summons and the Complaint.

6. Pursuant to Rule 12(a)(1)(A) of the Federal Rules of Civil Procedure, Defendant had 21 days—through June 2, 2021—to file a responsive pleading.

7. However, Defendant has failed to file a responsive pleading or otherwise respond to the complaint as required by the Federal Rules of Civil Procedure.

8. As such, a Clerk's Default was entered against Defendant on June 3, 2021 (Doc. # 22).

9. Plaintiffs again request that the Court enter a default judgment against Defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, which provides:

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

10. There are no issues in dispute and Plaintiff is entitled to final judgment by default for the damages sought in the Complaint, plus additional interest as set forth by the Declaration of Wayne G. Moss, attached hereto as **Exhibit A**.

11. As explained in the Declaration of Wayne G. Moss, Defendant is liable to Plaintiffs for damages in the principal amount of $172,156.33, together with interest thereon at

the rate of 2.52% annum from July 1, 2013, until paid, plus the amount of $500.00 (filing fee) and attorneys' fees in the amount of $6,990.00, together with interest thereon at the rate of 2.52% per annum from July 25, 2019.

12. Furthermore, pursuant to 7 U.S.C. § 499g(b), Plaintiffs are entitled to their attorneys' fees and costs incurred in connection with this action. Under Local Rule 7.01(b), Plaintiffs will submit a motion for those costs and fees within 14 days following entry of the judgment.

WHEREFORE, Plaintiffs respectfully request that the Court enter default judgment against Defendant.

Dated: July 26, 2021

                                                */s/ Dale M. Dowden*
Edward O. Savitz, Esq.
Florida Bar No. 183867
Dale M. Dowden, Esq.
Florida Bar No. 1010950
BUSH ROSS, P.A.
1801 N. Highland Avenue
P.O. Box 3913
Tampa, FL  33601-3913
Telephone:  (813) 224-9255
Facsimile:  (813) 223-9620
esavitz@bushross.com
ddowden@bushross.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 26, 2021, I electronically filed a true and correct copy of the foregoing with the Clerk of the United States District Court for the Middle District of Florida by using the CM/ECF system.

                                                */s/ Dale M. Dowden*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAN-WAY FARMS, INC. and SAN-WAY
FARMS, INC. D/B/A ALAFIA RIVER
FARMS, LLC,

      Plaintiffs,

v.                                                                                  Case No. 8:20-cv-1969-T-36CPT

SANDIFER FARMS, LLC,

      Defendant.
_____/

## DECLARATION OF WAYNE G. MOSS IN SUPPORT OF AMENDED MOTION FOR DEFAULT JUDGMENT

I, Wayne G. Moss, being under penalty of perjury, state as follows:

1. I am the president of San-Way Farms, Inc. ("San-Way") and San-Way farms, Inc. d/b/a Alafia River Farms, LLC ("Alafia"). I submit this affidavit based on my personal knowledge and knowledge obtained from a review of San-Way Farms, Inc. and San-Way farms, Inc. d/b/a Alafia River Farms, LLC's records, which I have reviewed in the normal course of my job duties.

2. Plaintiffs bring this action to enforce a Reparations Award issued against Defendant and in favor of Plaintiffs by the United States Secretary of Agriculture.

3. From May 11, 2013 to June 19, 2013, San-Way and Alafia orally agreed to send Sandifer Farms, LLC ("Sandifer") approximately 434 shipments of watermelon and cantaloupes.

4. Acting as San-Way and Alafia's agent, Sandifer orally agreed to sell, on San-Way and Alafia's behalf, the watermelons and cantaloupes to various parties under PACA license number 20060588.

Exhibit A

5. When Sandifer refused to pay San-Way and Alafia for the full amounts of the watermelon and cantaloupes, San-Way and Alafia filed informal complaints against Sandifer with the United States Department of Agriculture before the Secretary of Agriculture.

6. The informal complaints were assigned PACA Docket Nos. E-R-2014-12 and ER-2014-14.

7. San-Way subsequently took ownership over both complaints and the claims stated therein.

8. As a result of the PACA Division's audit, investigation, and evaluation of both claims, San-Way filed formal complaints with the USDA.

9. On July 25, 2019, the Secretary of Agriculture issued an Order finding that Sandifer owes San-Way $123,039.84 for E-R-2014-12 and $49,116.49 for E-R-2014-14, for a total amount due of $172,156.33, together with interest thereon at the rate of 2.52% per annum from July 1, 2013, until paid, plus the amount of $500.00 (filing fee), and attorneys' fees in the amount of $6,990.00, together with interest thereon at the rate of 2.52% per annum from July 25, 2019.

10. The July 25, 2019 Order also required full payment to be made to San-Way on or before August 24, 2019.

11. Sandifer failed to pay San-Way any portion of the amounts owed as stated in the July 25, 2019 Order on or before August 24, 2019 or at any point thereafter.

12. As a direct result of Sandifer's failure to pay the amounts awarded by the July 25, 2019 Order, San-Way has incurred losses in the principal amount of $172,156.33 and all accrued unpaid interest and attorneys' fees which are immediately due and owing. A true and correct copy of the USDA Order is attached hereto as **Exhibit A**. The amount currently due and owing is:

| Outstanding Principal Amount | $172,156.33 together with interest thereon at the rate of 2.52% per annum from July 1, 2013, until paid |
|---|---|
| Attorneys' Fees and Expenses | $6,990.00 together with interest thereon at the rate of 2.52% per annum from July 25, 2019 |
| Filing Fee | $500.00 |

13. Interest will continue to accrue until the balance is paid in full.

14. This affidavit is submitted to support the entry of default judgment against Sandifer Farms, LLC and in favor of the Plaintiffs pursuant to the USDA's July 25, 2019 Order.

15. To my knowledge, Bruce A Barron, the principal of Sandifer Farms, LLC, is not on active duty military status. *See* Non-Military Affidavit attached hereto as **Exhibit B**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Wayne G. Moss as designated representative of San-Way Farms, Inc. and San-Way Farms, Inc. d/b/a Alafia River Farms, LLC

**STATE OF FLORIDA**
**COUNTY OF** Hillsborough

THE FOREGOING INSTRUMENT was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 16th day of July, 2021, by Wayne G. Moss, who is personally known to me or who has produced _____ as identification.

*Rebecca V. Harkins*
Signature

Rebecca V Harkins
Printed name of notary

GG 333270
Notary's Serial Number

REBECCA V. HARKINS
Notary Public - State of Florida
Commission # GG 333270
My Comm. Expires Jul 20, 2023
Bonded through National Notary Assn.

3

1= 16FK774702.DOCX6FK774702.DOCX

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

| | | |
|---|---|---|
| San-Way Farms, Inc., | ) | PACA Docket No. E-R-2014-12 |
| | ) | |
| Complainant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Sandifer Farms, LLC, | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| San-Way Farms, Inc., | ) | PACA Docket No. E-R-2014-14 |
| d/b/a/ Alafia River Farms, LLC, | ) | |
| | ) | |
| Complainant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Sandifer Farms, LLC, | ) | |
| | ) | |
| Respondent | ) | Order on Reconsideration |

**Preliminary Statement**

In these reparation proceedings under the Perishable Agricultural Commodities Act, 1930, as amended (7 U.S.C. § 499a *et seq.*), a Decision and Order was issued on March 22, 2019, in which Respondent was ordered to pay Complainant as reparation $172,156.33, with interest thereon at the rate of 2.52 percent per annum from July 1, 2013, until paid, plus the amount of $500.00. Respondent was also ordered to pay Complainant an additional amount for attorney's fees and expenses of $6,990.00 with interest thereon at the rate of 2.52 percent from the date of the Order, until paid.

EXHIBIT A

On April 12, 2019, the Department received from Respondent a Petition for Reconsideration of the Order (Petition). Complainant was served with a copy of the Petition and afforded the opportunity to submit a reply. On May 15, 2019, Complainant filed a reply to the Petition requesting it be denied.

## Discussion

Respondent asserts in its Petition that "the hearing" from which the March 22 Order was issued is not "on the complaint" filed in the underlying actions, and therefore, cannot be sustained as lawful under 7 U.S.C. §499g (a)(1)." (Petition at 1-8.) Respondent makes this assertion based on a statement made in the Complaint that a written contract existed between the parties. Complainant's formal Complaint for E-R-2014-14[1] reads, in pertinent part, as follows:

> 4. That on or about the May 9, 2013 to June 2, 2013, in course of interstate commerce, complainant, by **written contract** sold to the respondent 180 truckloads of watermelon and cantaloupe, being a perishable agricultural commodity at the agreed price of $49,116.49.

(Petition at 3.) (Emphasis added)

At hearing, it was determined that the contract between the parties was an oral contract. (Tr. 1:16:19-1:17:4: and 1:45:4-9) This determination was made from both Complainant's and Respondent's testimony. (Tr. 1:16:19-1:17:4: and 1:45:4-9) In addition, Complainant's Exhibits submitted with its Complaint, Complainant's informal Complaint, and the Department's Report of Investigation (ROI) all indicated that an oral agreement existed between the parties from the very beginning of this action. From the commencement of this proceeding with the singular exception of the formal complaint,

---

[1] The Complaint in E-R-2014-12 contained similar language with the exception that the dates of shipment, the particular amounts of produce purchased, and the amount of damages sought by the failure to pay were different.

both the Complainant and Respondent have expressed that an oral agreement existed between the parties, not a written contract.

The Department has determined that this misstatement in Complainant's pleading was an administrative or technical error. A review of the record supports that determination. First, both Complainant and Respondent were notified by the Department in the informal handing of this matter that the contract between the parties was an oral contract. This is evident in the Department's two investigative audits conducted between October 2014 and August 2015 that read as follows:

**Contact Elements:**
Complainant, Wayne Moss states that he made a **verbal agreement** with Mike Harris to market watermelon and cantaloupes for the spring 2013 season.

(E-R-2014-12 ROI Ex. K at 2 and E-R-2014-14 ROI Ex. P at 2. Emphasis added.) At this time, Respondent was fully aware that the nature of the contract between the parties was that of an oral agreement. Secondly, Complainant attached the informal investigative audits as exhibits to its Complaint that indicated oral contracts between the parties. (E-R-2014-12 Compl ¶ 9; Ex. 2 and E-R-2014-14 Compl ¶ 9; Ex. 2) Respondent in its Answer to the Complaint indicated that it was without sufficient knowledge or information to admit or deny the allegations contained in these investigative audits. (Compl ¶ 9; Answer ¶ 4.) However, these exhibits were created by the Department and included in its ROI which were provided to the parties prior to the filing of the formal Complaint or the oral hearing. As previously discussed, the Department had determined the contractual relationship between the parties as an oral agreement (ROI E-2014-12 Ex. K at 2 and E-R-2014-14; Ex. P at 2) and the exhibits provided with Complainant's Complaints were previously provided to the parties as evidence in the proceeding. Finally, at hearing the

parties both agreed that oral agreements formed the basis of their dispute. (Tr. 1:16:19-1:17:4: and 1:45:4-9)

The Department's Decision and Order in this case was issued after Complainant presented a valid claim against Respondent in its Complaint. In prior cases, technical or administrative errors have not invalidated a matter when a valid claim is expressed in a pleading. A technical error in a pleading is not fatal to its validity. *B. G. Sales v. Sin-Son Produce Co.*, 43 Agric. Dec. 1991, 1996 (1984); *Armand Co. v. FTC*, 84 F.2d 973 (2d Cir., 1936), *cert. denied*, 299 U.S. 597 (1936). Furthermore, it is well settled that the formalities and technicalities of court *pleadings* are not applicable in administrative proceedings[2]. It is only necessary that the complaint in an administrative proceeding reasonably apprise the litigant of the issues in controversy; any such notice is adequate and satisfies due process in the absence of a showing that some party was misled.[3] It is apparent from Respondent's Answer to the Complaint and its own testimony at the hearing that it was apprised of the issues in controversy (Answer, ¶ 2.) In fact, Respondent's Mike Harris' testimony indicates that he never believed that there was a written contract between the parties that it needed to defend against in this matter—only the oral contract expressed from the very beginning of this action as it was a matter of

---

[2] *Wallace Corp. v. NLRB*, 323 U.S. 248, 253 (1944); *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 142-44 (1940).

[3] *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 350-51 (1938); *Aloha Airlines, Inc. v. CAB*, 598 F.2d 250, 261-62 (D.C. Cir. 1979); *NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157, 1161 (5th Cir. 1977); *L.G. Balfour Co. v. FTC*, 442 F.2d 1, 19 (7th Cir. 1971); *Bruhn's Freezer Meats of Chicago, Inc. v. USDA*, 438 F.2d 1332, 1342 (8th Cir. 1971); *Swift & Co. v. United States*, 393 F.2d 247, 252-53 (7th Cir. 1968); *Cella v. United States*, 208 F.2d 783, 788-89 (7th Cir. 1953), *cert. denied*, 347 U.S. 1016 (1954); *American Newspaper Pub. Ass'n v. NLRB*, 193 F.2d 782, 799-800 (7th Cir. 1951), *cert. denied sub nom. International Typographical Union v. NLRB*, 344 U.S. 816 (1952); *Mansfield Journal Co. v. FCC*, 180 F.2d 28, 36 (D.C. Cir. 1950); *E.B. Muller & Co. v. FTC*, 142 F.2d 511, 518-19 (6th Cir. 1944); *A.E. Staley Mfg. Co. v. FTC*, 135 F.2d 453, 454-55 (7th Cir. 1943); *NLRB v. Pacific Gas & Elec. Co.*, 118 F.2d 780, 788 (9th Cir. 1941); In re Sterling Colo. Beef Co., 35 Agric. Dec. 1599, 1601 (1976) (ruling on certified questions), *final decision*, 39 Agric. Dec. 184 (1980), *appeal dismissed*, No. 80-1293 (10th Cir. Aug. 11, 1980); In re Holcomb, 35 Agric. Dec. 1165, 1173-74 (1976).

"trust" between the parties. (Tr. 1:38:19-39:20) For these reasons stated above, we find that Complainant's misstatement or technical error in a single pleading that the contract between the parties was a written contract and not an oral contract does not invalidate its entire claim. As a result, we find that Respondent's petition should be denied.

Based on our review of the evidence and for the reasons cited, we conclude that Respondent's petition is without merit and should be denied. There will be no further stays of this Order based on further petitions for reconsideration to this forum. The parties' right to appeal to the district court is found in section 7 of the Act (7 U.S.C. § 499g).

## Order

Within 30 days from the date of this Order, Respondent shall pay Complainant as reparation $172,156.33, with interest thereon at the rate of 2.52 percent per annum from July 1, 2013, until paid, plus the amount of $500.00.

Within 30 days from the date of this Order, Respondent shall pay to Complainant, as additional amount for attorney's fees and expenses of $6,990.00 with interest thereon at the rate 2.52 percent from the date of this order, until paid.

Copies of this Order shall be served upon the parties.

Done at Washington, D.C.
July 25, 2019

Judge Bobbie J. McCartney
Digitally signed by Judge Bobbie J. McCartney

Bobbie J. McCartney
Judicial Officer
Office of the Secretary

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAN-WAY FARMS, INC. and SAN-WAY
FARMS, INC. D/B/A ALAFIA RIVER
FARMS, LLC,

    Plaintiffs,

v.                                                               Case No. 8:20-cv-1969-T-36CPT

SANDIFER FARMS, LLC,

    Defendant.
_____/

## NON-MILITARY AFFIDAVIT

    We, San-Way Farms, Inc. and San-Way Farms, Inc. d/b/a Alafia River Farms, LLC are the plaintiffs in this case. To comply with 50 U.S.C. § 3931 (2020), we swear or affirm that the following information is true:

1. \_\_\_\_\_ I know of my own personal knowledge that Bruce A. Barron, the principal of Sandifer Farms, LLC, **IS** on active duty in the military service of the United States.

2. \_\_\_\_\_ I know of my own personal knowledge that Bruce A. Barron, the principal of Sandifer Farms, LLC, **IS NOT** now on active military duty in the military of the United States, nor has he been on active military duty of the United States within a period of thirty (30) days immediately before this date. "Active Service" includes reserve members of the Army, Navy, Air Force, Coast Guard and Marines who have been ordered to report for active duty.

3. **X** I have contacted the military services of the United States and have obtained certificates showing that Bruce A. Barron, the principal of Sandifer Farms, LLC, is not on active duty status. These certificates are attached.

4. \_\_\_\_\_ I have attempted to determine the military status of Bruce A. Barron, the principal of Sandifer Farms, LLC, but do not have sufficient information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this affidavit and that the punishment for knowingly making a false statement includes fines and/or imprisonment.**

                                                                                       **EXHIBIT B**

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Wayne G. Moss, as designated representative of San-Way Farms, Inc. and San-Way Farms, Inc. d/b/a Alafia River Farms, LLC

**STATE OF FLORIDA**
**COUNTY OF** Hillsborough

THE FOREGOING INSTRUMENT was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 16TH day of July, **2021**, by Wayne G. Moss, who is personally known to me or who has produced _____ as identification.

Rebecca V. Harkins
Signature

Rebecca V. Harkins
Printed name of notary

GG 333270
Notary's Serial Number

REBECCA V. HARKINS
Notary Public · State of Florida
Commission # GG 333270
My Comm. Expires Jul 20, 2023
Bonded through National Notary Assn.

Department of Defense Manpower Data Center

Results as of : Jul-01-2021 06:31:58 AM

SCRA 5.8



# Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-1072 |
| Birth Date: | Dec-XX-1947 |
| Last Name: | BARRON |
| First Name: | BRUCE |
| Middle Name: | |
| Status As Of: | Jul-01-2021 |
| Certificate ID: | GH35L42XXQBZNJV |

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.